Our last case of today, number 20-2872, Dongarra v. Smith et al., Ms. Crowley and Mr. Jani. Am I pronouncing it correctly? Perfect, thank you. It's not Jani, it's Jani? Jani. Got it, thank you. Give me a second. Although I wonder how you figured that out. Sometimes I do too. Oftentimes I put the emphasis on the wrong syllable. Whenever you're ready. Thank you, Your Honor, and may it please the Court. Megan Crowley on behalf of Appellant Jordan Dongarra. I'd like to reserve two minutes for rebuttal. That's fine. Thank you. Under the Supreme Court's decisions in Farmer v. Carlson, a federal prisoner has a Bivens remedy against a prison official who fails to protect him from a substantial risk of serious harm at the hands of other prisoners. It is clear that the Supreme Court has, pursuant to Bivens, recognized a failure to protect claim under the Eighth Amendment. This is precisely the claim that Mr. Dongarra asserts here against Defendant Smith, who issued Mr. Dongarra an identification card and T-shirt. Mr. Dongarra, after how long was it before he was, he got what he was asking for, in other words, not to have to wear that particular shirt, which he believed identified him as something he was not? The complaint in this case, the pro se complaint in this case, alleges that it was a matter of weeks and that he followed up after his, he was given the T-shirt and the identification card upon his intake into the facility. And the T-shirt said what, Terre Haute on it or what? It did. The complaint states that it said Terre Haute on it and that it also, it says that it labeled him as a sex offender and also stated Terre Haute, which is that it was coming from Terre Haute, which is a known sex offender facility. So it's not exclusively right? Or is it exclusively? That's not in the complaint. The allegations are that it's a known sexual facility for sex offenders. And again, the pro se complaint has this language that says that it was a T-shirt that labeled him as a sex offender and in addition had a label of Terre Haute. So it's not entirely clear from the allegations in the complaint what this additional labeling of sex offender, but it is clearly alleged in the complaint that both the T-shirt and the identification card labeled him as a sex offender, that this would be known to other inmates, that this was what these labels meant, that he was a sex offender and that in the prison context, that labeling placed him at extreme risk of harm, including death. To the extent that there has been a context recognized in Farmer and by this court, why isn't that specific to the harm of assault by other or perhaps the psychosomatic consequences that went along with that. But it's not the context that we recognized previously where there in fact was a prisoner assault. Your Honor, it is well established that the Eighth Amendment protects, quote, future harm to prisoners. And it is well established from this court's precedent that the reasonable safety that is guaranteed under the Eighth Amendment includes the threat, substantial threat of harm to a prisoner. So accept that there is an Eighth Amendment violation. There's a remedy of injunctive relief, but you're looking to a remedy of damages. And where there has actually been an assault. Well, Your Honor, the language of Farmer speaks to and Bissering and Shorter speaks to the substantial risk, the substantial risk of harm. That is a similar language that's used in the Eighth Amendment context, a substantial risk, not an actual completed assault. And the Eighth Amendment does not require assault to be completed. Instead, it is the concern that what the Eighth Amendment is addressing is placing the prisoner at the substantial risk of harm, which we clearly have allegations here that there was a substantial risk, that the defendant Smith was on notice of that risk, that he acknowledged that risk. I understood, but distinguish here between the Eighth Amendment, where you have those sorts of arguments, but we're in the land of Bivens, which takes it a step farther, where you're looking for a damages remedy, not the other kinds of remedies that are used for unpublished opinions. But they make clear that a Bivens remedy can be available for a failure to protect claim, even if there's no completed assault. Other circuits have similarly recognized as much. So that in our page 10 of our reply brief, we cite a number of cases coming out of the Tenth Circuit. We cite cases like Devaris, Leary v. Livingston coming out of the Sixth Circuit. And those cases recognize that even in the context of a failure to protect claim, that it does not require a completed assault. And that makes sense, because again, the allegations here are that Mr. Dungar took extreme measures to avoid being assaulted. He stayed in his cell. He did not go to prison time. I'm sorry, he did not go to recreation time. He did not attend meals, which caused him physical effects of starvation, anxiety. Those are sufficient under this Court's precedent and other circuits precedent, under the Supreme Court precedent, to point blank that the sort of emotional harm that goes, the anxiety that goes with being labeled as a sex offender is not itself sufficient for deprivation of necessities of life to constitute an Eighth Amendment violation. Well, Ruchensky, a large, as I'm sure Your Honor knows, a large portion of discussion there was not arising in the Eighth Amendment. But when the Court did turn to the defendant, the stress that he suffered was incidental to the defendant's official actions, which is not the case here. And there, it was crucial to the Court's holding on the Eighth Amendment claim for Ruchensky that there was no wanton state of mind. Whereas here, we have clear allegations that I hope you know how to fight or make and use a knife. I mean, this is clearly a wanton state of mind. So I think that distinguishes the case from the dicta in Ruchensky, which could suggest that under the facts of that case, it was not sufficient to get over the Eighth Amendment threshold, over the Eighth Amendment hurdle. In effect, what you're saying is that obviously, this should be under Bivens. And the question is really being asked of us, how much variation can exist in the facts for there to be a meaningful difference that triggers a Bivens context, whether you say there's a Bivens action or not? Yes, Your Honor. Obviously, he makes it pretty clear. We're very constrained. It's true, Your Honor, that in Abassi, the Supreme Court did indicate that it is or did hold that you are constrained. However, Abassi recognized that it needs to be a meaningful difference from prior Bivens contexts. What makes a fact meaningful? So the Abassi court listed a number of factors, six factors. And here, each of them line up between Farmer and the allegations of the complaint here. So first, in considering whether this case differs in a meaningful way, the Abassi court has directed courts to consider, first, the rank of the officers. Here, same as in Farmer and in Carlson, all involved conduct of rank and file prison officials. Second, constitutional right at issue. Here, all three involved violations of the Eighth Amendment, failure to protect a prisoner from a substantial risk of harm. Third factor that the Abassi court indicated was the generality or specificity of the official action. Here, again, just as in Farmer and Carlson, we have discrete conduct targeting a particular prisoner. Fourth, the fourth factor is the extent of judicial guidance regarding how an officer should respond to a problem. And here, we have ample judicial guidance that labeling someone a sex offender can violate the Eighth Amendment. Again, in McIntosh and Moore, cases in Benefield from the Tenth Circuit, in cases arising outside of the Bivens context as well. I think Judge Beebers has a question. McIntosh and Moore both decided long after he got the T-shirt. I don't see how that could be clearly established at the time of the alleged violations. Yes, Your Honor. They're both NPOs, right? They're both not presidential? They're both non-presidential opinions, Your Honor, but again, as the cases cited in our reply brief at page 10 make clear that there is ample judicial guidance arising from other circuits. Sixth and the Tenth Circuit case. Sixth and the Tenth Circuit case. And again, to the extent, you know, of course, the Eighth Amendment analysis is distinct from the Bivens, the failure to state a claim analysis is distinct from the Bivens analysis. And here, we are focused on the Bivens analysis. But the Supreme Court has indicated as well that under the Eighth Amendment, you don't have to wait for a completed harm. We also have district court cases, at least one, that have arisen post-Abbasi that have recognized a Bivens action, a Bivens claim, for a failure to protect. Isn't the requirement of clarity at least as clear as it has to be for qualified immunity? I mean, where's the robust consensus of cases of persuasive authority here? You're citing non-presidential, you're citing district court cases, you're citing cases later. You know, your best really here is the Sixth and Tenth Circuit cases. I don't know that two other circuits amount to a robust consensus of persuasive authority, do they? Well, Your Honor, the question in Merchensky, this court did recognize that extreme stigmatization associated with being labeled a sex offender in the prison context, that there is extreme stigmatization being labeled a sex offender in the prison context. There's also extensive authority regarding being labeled a snitch, which is a somewhat analogous situation of being labeled, you know, targeted on your back of something that will lead to repercussions from other inmates. Okay, but in the Abbasi, you know, we're supposed to be looking at what special factors might counsel hesitation. So we're talking about the prison onboarding process here. And that seems different to me from snitches where there's a sense, okay, you're on the side of the government, I'm on the prison officials. Like, I think, you know, the issuance of clothing that a particular prison facility, you know, how obvious is it going to be about terror? Like, it does seem like there may be different considerations in this context. And so back to Judge Amber's question, how specifically are we looking? I mean, are we going to be having judges micromanage onboarding procedures and what clothing people are offered? So it does seem like we can't just freely analogize from snitches, for example, or cooperating witnesses or informants. Your Honor, our position is that here we don't even need to reach that second step and these factors, because it is under Bistrian and Farmer. I'm sorry, under Bistrian and Shorter, it is an establishment in its context. But you have to read those at a higher level generality than maybe you have to or your friend on the other side would. But if we get to that second step. Yes. So if we get to that second step, Your Honor mentioned prison procedures and the need to police those prison procedures. Here we're not talking about prison procedures. The clear allegations of the complaint are that Mr. Dengar was treated differently than other inmates. That he said, I received a different T-shirt and identification card from all the other inmates and that there was a disregard of the concerns that he expressed about what that would do to hit the threat to his life and safety. So here, as I understand my time is up. May I finish? Go ahead. Ebony, why don't you have five more minutes, please? Here, there is not, the allegations have nothing to do with the prison's procedures for admitting prisoners. Instead, it seeks to hold an individual defendant who is departing from where the alleged prison procedures are by targeting Mr. Dengar. That does not implicate the separation of powers concerns that the court expressed in Abassi and that have been recognized by other courts, including this one. And I think that because of that, that is just a distinguishing factor between this case and cases like Abassi where there are separation of powers concerns that are implicated. And going back to the question of how finally on the first step we need to distinguish between the allegations and the facts at issue. The Supreme Court has, of course, again, required in Abassi, required lower courts to limit the expansion of Bivens. However, they have not suggested there needs to be perfect equivalence between cases. Right across the street, 7th Street, somebody was attacked in the courtyard and they knew that there was a problem. And then in Shorter, you have someone who's transgender, put everyone on notice and was nonetheless attacked, viciously assaulted. Here was somebody who was really quite frightened, there's no doubt about it. But quite fortunately, nothing happened. And that fact difference would seem to be in a very constrained atmosphere given to us by the Supreme Court in Abassi and elsewhere, perhaps Hernandez versus Mesa as well, that it's going to be very tough to show that there's really a meaning, that it's the same. That instead there's a meaningful difference and then you go on to other factors to consider whether there should be hesitation by courts in getting involved. Your Honor, I think looking to what the factors that the court in Abassi directed lower courts to consider in determining whether there's a meaningful difference. The court acknowledged that there need not be identical factual allegations. The court recognized that there are certain factors that should go into the analysis of whether there's a meaningful difference. And here, just marching through those factors, each of them line up with the allegations of the complaint here. And I think that, you know, the concerns, some of the additional concerns of opening floodgates or concerns about the separation of powers issues that we discussed a few moments ago, those simply, in the Bivens context, pre-Abassi, courts have recognized that labeling a prisoner or sex offender in a prison context is stigmatizing, places them at substantial risk of harm. And that is the language that is used in farmer. That is the substantial risk of harm, not a completed assault that causes X amount of injury. Substantial risk of harm. And again, here we, on top of that, we also have allegations that the harm, that it did cause Mr. Dungar physical harm, that he took extreme measures to avoid an attack by another prisoner, but that he did suffer physical harm. The facts are different. I mean, it seems as if, if I were to take a guess, you've got a court that's very concerned that if it continues to allow Bivens cases, and other than those cases in which they're on essentially all fours with what it's done in the past, that it's going to open the floodgates. Everybody's going to be sued. And that's, the consequence of that is not something that they wish to have. And that's a decision they can make. And so you've got to show that this is pretty much on all fours in some way relating to farmer, perhaps, as interpreted by Bistrian and or Shorter. And you run into a problem because there was not any physical assault that occurred. Yes, Your Honor. On the floodgates concern, there again, these types of claims have been recognized in the past without leading to a floodgate of litigation. And there are also various tools to weed out frivolous claims, which ensure that these claims would not overwhelm prison officials and overwhelm the courts. So, for example, the role the courts play under the PLRA to screen out frivolous lawsuits even before a case is docketed. And here, the complaint presumably went through that screening process. We have no reason to believe it did not. Similarly, officials may escape liability under Bivens for deliberate indifference claims in a number of ways. For example, in the Tenth Circuit case I had mentioned, the Brown v. Navarez from 2008, as a Bivens case, the court recognized that labeling someone a child molester was sufficient to state an Eighth Amendment claim, even though no attack occurred, but noted that it's possible that this would not extend to circumstances where the official failed to prevent a harm as opposed to creating a harm. So there, like here, there was an actual allegation of the creation of the harm by the defendant, not merely a harm that existed separate from the official's conduct. But the allegation here is not that the harm was created intentionally. It's that the failure to remedy it was deliberate indifference, right? I think in the Sixth Circuit case, that was the one where the guard went out and said, hey, it would be a terrible thing if these people found out you had molested a nine-year-old. So, you know, it's a little in between. Yes, Your Honor. In the Tenth Circuit case, there was allegations that there was a, you know, overt oral statement in that regard, whereas here what we have is we have allegations in the per se complaint that he was doing this intentionally. There are no allegations of an oral statement, but there are allegations that it was done intentionally in order to label, because Defendant Smith thought it would be funny to give him this false label. What detail is there in there that would satisfy, you know, our plausibility pleading standard? I mean, we cut him a little bit of slack as per se, but is there any detail that suggests reason to believe that it was intentional, the giving of the T-shirt and ID as opposed to the failure to change it once the error was discovered? Yes, Your Honor. Actually, the vast majority of the meat on the bones of the allegations relate to the giving of the T-shirt. And so in Appendix 32 and 33, the complaint alleges that he gave the T-shirt an identification card, which he alleges would make other prisoners believe Mr. Dengar was a sex offender, that he expressed to Defendant Smith that the prison norms would lead to him, that other prisoners would make other prisoners believe he was a sex offender that could endanger his life. Defendant Smith acknowledged the risks, said, I hope you know how to fight, and I hope you get a knife, I hope you know how to fight. And again, there are additional allegations that he was doing this to be, because he thought it would be funny. So here we have not just a subjective fear based on something. We have actually a defendant acknowledging the concern, acknowledging the risk that Mr. Dengar was being placed at, and a continuation of the behavior and failure to correct it for weeks at that point, including then, as Your Honor referenced, subsequent follow-ups of requests to replace the T-shirt and identification card and a refusal to do so. Where do we have in our case law recognition of a Bivens action for, and I understand your argument that there were physical consequences to it, but for purposes of this question, for emotional harm, for psychological harm? So in the Bivens context, again, in McIntosh and in Moore, the court has recognized in those cases, the court recognized that this emotional harm could have a precedential opinion. We do have, from this court's jurisprudence, the court has recognized in Rochensky, as I mentioned, that this emotional harm could lead to an, for an Eighth Amendment claim. And similarly, in Rhodes v. Robinson, which was a Third Circuit 1978 case, which is cited in Rochensky, the court recognized that this could be sufficient, that the emotional harm, if combined with a wanton state of mind, could be, could rise to the level of, it could equal what could be caused in a physical attack. But whether or not that's true for the Eighth Amendment, where have we suggested that for a Bivens action? So I believe that in the Rhodes v. Robinson case, the court stated that the emotional distress, the language in the court's claim is emotional distress can produce an injury of the same severe magnitude as a case of physical harm. And this court has relied on those cases, that case, I don't believe Rhodes is a Bivens case, but it has relied on that case for that principle in the context of Bivens cases in the McIntosh and Moore. Thank you. We'll get you back on rebuttal, and perhaps on rebuttal we may ask some questions for you in connection with the qualified immunity point that's been made by the other side. Great. Thank you, Your Honor. Mr. Gianni. Good morning, Your Honors. May it please the court. My name is Naveen Gianni, appearing on behalf of Defendant Napali, Officer David Smith. Just as a factual matter, does the Bureau of Prisons have any policies regarding what T-shirts inmates receive when they are onboarded into a facility? As far as specific policies, I'm not aware. This is more kind of a day-to-day detailed thing. They'll be given standard issuance clothing. So, I mean, there's certainly nothing about exact dimensions or such like that. But this person was given a shirt that was different from what others were given, is that correct? According to the allegations, correct. He's alleging that he received a shirt that was different from what other inmates were getting as there were coming new inmates being transferred to this facility. Why would he have been given a T-shirt for a different prison is what I can't figure out. Why would he have been? I don't know. I don't know why. I mean, if it was just got thrown in there, there was some mixing. Yeah, it's surprising. It's a standardized process. It hasn't come up, right, in other cases. I mean, it seems like a peculiar event if it did, in fact, happen. When you go to the allegations and supposedly that it has significant meaning that you might be a pedophile or that you are a pedophile, and he goes to Smith and he says something, and Smith just, you know, says he doesn't care. So what? Hope you can take care of yourself. If that's true, and I realize if that's true, isn't there something that you can say with respect to an action or a remedy that deals with that? Isn't there supposed to be something out there, whether it be Bivens or something else? What would it be? Well, I think that's – and I appreciate you asking that question, Judge Amber, because I think that's critical. It's one thing if we're talking about, and it's come up already, the Eighth Amendment in general. Has Mr. Dungara pleaded a violation of the Eighth Amendment? That's really a very different question than whether he has a damages remedy. Injunctive relief can be pursued. Let's separate them out. I want to hear answers to both of those. As far as? Let's talk about the substantive Eighth Amendment issue, and then we'll talk about the Bivens issue. Sure, sure. Okay, so one is whether he's pleaded a violation of the Eighth Amendment. Now, if we look at the case law, for example, again, these are not Bivens cases. I would question that characterization. McIntosh and Moore, they're not talking about whether there's a cause of action under Bivens but whether there's a violation of the Eighth Amendment. If we look at those two, they have two criteria that are not present in Mr. Dungara's claim. One is that there's direct labeling of sex offender status. Both of those cases, there's officials in front of other inmates, other officials, labeling, there are allegations labeling the inmate as a sex offender. Here it is indirect. We have the issuance of a T-shirt that says Terre Haute. I think it's a stretch to read the complaint as alleging there was some additional marking or information on the shirt. I think the complaint read naturally is that that is what he's alleging alerted other inmates. On page 20, Mr. Dungara says this Terre Haute is a sex offender yard and a dropout yard. Dropout yard being some special prison for a special class of inmates. If there was a prison official that got put in prison, you'd keep them separate. And so that and implies, and he doesn't allege it's 100 percent sex offenders. And as far as the code on the ID card, again, page 20, he says, he alleges that you have to scan it to come and go, but not that he wears it all the time, not that it generates some telltale sign as he goes in, you know, warning, sex offender entry. We're dealing at this stage with a complaint. And let's assume that we have, whether it's an official who is saying it aloud or making an inmate wear it to say it indirectly, as you put it. What is your other reason? What is your other distinction? The other reason is an actual attack or threat. Now, here, and we're not talking about a quantitative, that there was some threats going towards that compared to a very severe beating. There's no allegations of even a step in that direction. There's no allegations that even other inmates recognized that the ID card or the T-shirt marked him as a sex offender, that they were aware of that. No allegations along those lines. But we're talking, again, about stating an Eighth Amendment claim here. Sure. And you would agree, I assume, that our jurisprudence and that of the Supreme Court does not require someone to actually be assaulted or killed before there is a deliberate indifference claim. It's based on substantial risk of future harm, right? Correct. Yeah. Yeah, we would agree with that. We would agree that even without there being that sort of completed harm, that had he proved those elements, that he would have been entitled to the relief of an injunction had there not already been that relief granted, right? I agree insofar as, yeah, a harm doesn't have to actually happen for there to be a relief. The qualifications, I would add, is, one, if we look a little bit at these cases, just for kind of some guidance of the types of claims, this Court would see as establishing Eighth Amendment violation. We do see both in McIntosh and Moore there was an actual attack. And in Moore it was, or in McIntosh, the case was sent back to see if, quote, such insults resulted in increased assaults against him. So the Court was very interested not whether there was actual threat or actual fear, but whether there was actual assault. Again, in Moore, quote, that whether he was assaulted. That sounds like we're stepping backwards. I thought you had acknowledged our case law that states this is about substantial risk of future harm. It doesn't need to be a completed physical assault if it's established that there is a substantial risk. And there is awareness of that on the part of a prison official. And they failed to take action. And that's why there is relief, as in Heller and Riley, of an injunction, even if there has not yet been that harm as to a particular inmate, right? Correct. Correct. The qualification that I would add to that is that the lack of an actual attack or even some threats or awareness speaks to whether there was really an objective risk. And so it's one thing to have a risk that we can see. There's a transgender inmate who is we've seen shorter. The psychologist verified this person should be transferred. There was already an attack. For a while, they were assigned with another sex offender. Are you saying that a plaintiff can't establish a substantial risk of harm unless he or she has already been attacked? No, I don't think that's the case. But I think here the fact that there wasn't even an allegation that other inmates were aware that this T-shirt is marking Mr. Dongura as a sex offender speaks to whether there was really a risk. So it's just really showing that, I mean, Farmer talks about an excessive risk. And so here, even if there was some risk, it was minimal. And so it's questionable whether it would be enough to establish a hateful mind violation. Even if it did, of course, Bivens is another discussion. So it's the government's position that being labeled, mislabeled a sex offender in prison doesn't create a substantial risk of serious harm? If it was direct, if it was direct, here we would, if it's like you had the McIntosh and Moore where prison officials, there's allegations that they are openly alleging. I think that arguably creates that kind of risk to establish a violation. I think where it's indirect, that link is really vitiated to a great degree. So the difference is between their speaking to inmates, other inmates, third parties, versus speaking to him directly, that the speech to the inmates could be actionable, but the actions coupled with private speech are not actionable? You think that's enough to distinguish it as a substantive eighth amendment matter? If I follow what Your Honor is saying, here, other than the allegations that this shirt has a label of another prison and that equates to sex offender status and the card has a code programmed into it and somehow that's, other than that, we don't have there being other conversations, other inmates speaking with him, other prison officials saying it. There's just that one initial act. But doesn't the substantial risk of harm arise from the perception of other inmates? Yes, yes. Does it matter in that case whether they have learned that someone is a sex offender or purported to be a sex offender because a prison official says it or because a T-shirt says it or because another inmate says it? Does that make a difference for eighth amendment purposes? If, for just establishing the eighth amendment violation, if that could be understood, yes, the source of the information, the source of the impression, I don't think would be relevant. Here is just a question of whether it even got to that stage where the other inmates, we can kind of objectively say, oh, they're aware that this person is being marked as a sex offender. But if we had that confirmation, I think then, like Your Honor is saying, I don't think it would matter how they got that impression. Well, that's what he's alleged and that's where we are procedurally, right? He's alleging that, yeah, that that's how it would have been interpreted, correct. So is there any dispute then on the part of the government, again, looking at whether he's stated an eighth amendment claim that being known to be a sex offender in prison creates a serious risk of substantial harm or substantial risk of serious harm? Sure. I would say, I mean, without, you know, conceding things above my pay grade, I mean, I think it's safe to say that where there's some direct labeling and it's kind of clear the other inmates are perceiving this person as a sex offender, yeah, that's gone very far towards establishing an eighth amendment violation for the purposes of injunctive relief or, you know, non-vivense purposes. It's gone very far or that does establish it as with a snitch or someone who's transgender? I mean, the only thing I would just say is if it was direct, yes, just here, I just question whether that happened. But, yeah, whether there's an eighth amendment violation, on behalf of Mr. Smith, the government's primarily arguing there's no vivense cause of action. And so, yeah, that's the only thing I would say that differentiates is just this direct labeling versus indirect. I thought you agreed a moment ago that this is really about the perception of inmates that creates the substantial risk of harm. Correct. Whether it's said aloud or it's said on a T-shirt, that doesn't seem to make a difference for those purposes, right? Right, right. Okay. And why then, so if we are in agreement that this is an eighth amendment violation that would trigger, for example, the ability to get an injunction, why should a different harm than that which perhaps we've recognized and has actually taken place in other contexts, the assault by inmates, that didn't happen here? But your colleague on the other side of the aisle identifies other kinds of harms, emotional and physical harms. Why isn't that just part and parcel of the same established context? Here, to begin with, I mean, the context that Mr. DeGarno is trying to fall under is this, and that which Farmer lays out, this Court recognized in Bistrian, and which opposing counsel began her presentation with, is this protecting prisoners from violence at the hands of other prisoners. However, what's left out of that, which isn't Farmer, and which this Court has recognized in Bistrian, is that it's for a known and substantial risk. And so those differences, as Judge Amber said, the question is, the panel of this Court has recognized the Supreme Court's conception of new context is broad. And so it's about the facts. Are the factual differences enough to create a new context? And they are here. A modest extension is still an extension, even if it's in the ballpark. And these two elements are there. Bistrian talks about, on page 90, the risk has to be known, which is another way of saying that there's some foreseeability of the harm. Now, we're not talking about what the Court discussed in Shorter, memorializing a particular threat of assault by a specific inmate. We're talking whether this generalized fear was reasonable. Here, the risk was not known. This is a new inmate. You have this brief initial exchange. There's no allegation that Smith knew Mr. Dongara before, had any motivation to do this maliciously. We have to infer Smith's awareness just from these couple of sentences spoken to him. You contrast that with the Shorter case, where we had the assault, we had screening, we just had the whole BOP process that said, this person's in danger, they need to be moved. We just don't have that here. If we take the allegations on their face, that the issuance of this T-shirt and card would label Mr. Dongara a sex offender, and that gives rise to a substantial risk of serious harm, why isn't it foreseeable that an inmate in that situation would take steps to avoid being attacked or killed, such as avoiding areas like a cafeteria where there's a lot of other inmates, or staying awake at night to assure that he's not assaulted while sleeping? Here, when I talk about the foreseeability, it's more the foreseeability of, again, the context is prisoner on prisoner violence, so whether this inmate's going to be attacked by another inmate. And Mr. Dongara's fear was not objective, was not grounded. Again, and this comes into the special factors analysis, is how many times do we have inmates have some kind of fear, some kind of paranoia, and every time they have something like that, is a prison official going to be responsible to accommodate it? If you are deemed by other inmates to be a sex offender, that you are in a vulnerable category, isn't that, I mean, can we agree on that? Yes, yes. And if you are just petrified because of that fear, the question is, and nothing is being done initially to take you away from that vulnerable category and to correct the record, if you will, then I come back to the question I asked at the outset, what kind of claim does that person have? If the fear is objective and reasonable and rational to some extent, then I think we're in farmer and shorter territory, and Bistrian territory. But where it is not grounded in, it's not a reasonable belief, so he's reacting, he's reacting to his own perception of this, and this is just not the kind of case to create a Bivens remedy. Okay, maybe injunctive relief because there was some emotional harm. I mean, if we're going to speak about non-Ibazi cases, I mean, this court in Mitchell v. Horn, 2003, required, I think the Sixerga case in Leary talks about deliberate indifference to the protection of an inmate, and it says to raise a cognizable deliberate indifference claim, an inmate must show that the alleged mistreatment was objectively serious and that the defendant subjectively ignored the risk to the inmate's safety. And it would seem that if any of us in this room were in that position of Mr. Dongara, we would deem that to be objectively serious. We could really get hurt, right? For purposes of not a damages remedy, injunctive case, violation of the Eighth Amendment, I think we can go there for that, as I was discussing with Judge Krause. I think when we're in Bivens land, we have to answer that new context inquiry and hear the indirectness of the labeling, the fact that there was no attack or even a threat from any inmate, no allegations that, nothing to support his fear that an inmate said, oh, I heard you were a sex offender or something. And that creates a new context. And then we're in the special factors land. There's an alternative remedy for his explicit injunctive relief he's seeking. He wants to make sure this never happens to anybody else. On page 5, he wants to make Mr. Smith lose his job. Page 13, he says, I seek injunctive relief. And this was fixed within two to three weeks. So the BOP system, him complaining, it did work. And so we have an alternative remedy. It's like MAC, that there was no sustaining of any physical injuries with resulting monetary loss. And we have this intrusion into the executive branch of going into for Bivens purposes, even if there's an eighth amendment violation. Do we want the MAC court hesitated to get into analysis of the officer's reasons and motivations? Can I ask you about the qualified immunity issue that you raised as well? And, you know, we have talked about and wrestled in our cases with what level of specificity to define a right. And we've spent some time today talking about a right that may arise as a result of specifically being labeled a sex offender. If we're looking at the right and whether it's clearly established, should we be thinking about a right in this context as one that is specific to the type of label, as in here someone's being labeled a sex offender versus being labeled transgender or being labeled an informant? Or should we think of this at a higher level of generality, that is, and deliberate indifference claim that may arise when someone is labeled in a category that makes them a target, makes them a vulnerable? I think for, yeah, if we're talking about, again, not that the Bivens remedy, but whether it's clearly established for purposes of qualified immunity, I think what this court did in connecting, you know, bistro and farmer would be applicable to the extent that it could be that generalized labeling. So some kind of label that invites attack or puts the inmate in danger, it seems like that could be appropriate. And would that be clearly established? I don't believe it was, not at the time of these actions. At the time that Officer Smith was doing this, it wasn't clearly established that this is a violation and that any allegation of, oh, I feel this label and I therefore feel some fear, that has to be taken and acted on. And so that, and hence we raise the qualified immunity argument, although of course the district court did not rule on those grounds. I see I'm out of time. We may have a minute just to wrap up or if there's more questions. In the Sixth Circuit case, Leary, there was an actual assault, but the court said that there is a constitutional violation and it has been, the right, failure to protect right, is clearly established. Why shouldn't we, in effect, follow that, albeit this case was one dealing with great fear as opposed to an actual assault? I think the distinction I would draw between what you're presenting, Judge Amber, and what Judge Crouch proposed was one is a very broad just failure to protect from any kind of risk to inmate safety or harm. I think for purposes of qualified immunity, it would have to be more narrow. It wouldn't have to be narrow to the point of sex offender, but at least there's some kind of labeling. So not just general failure to protect, but in this context of a label. Any further questions? Thank you very much. All right. Thank you, Your Honor. Ms. Crowley, if you could address the Eighth Amendment issue and to some extent the qualified immunity context. Thank you, Your Honor. Yes. Briefly, on the Eighth Amendment question, first of all, a failure to receive a claim was not raised by defendants on appeal and has been waived. Putting that issue aside, here we have ample allegations that Defendant Smith knew what he was doing would put Mr. Dungar's life at risk. Mr. Dungar told him this. He responded and said, I hope you know how to fight and get a knife. That is a clear state allegation that Defendant Smith was aware of the risk he was placing Mr. Dungar in by giving him this T-shirt and the identification card. Similarly, my colleague on the other side said that we have no allegations about the other inmates. And again, in this per se complaint, we do have allegations at Appendix 32 and 33 that Mr. Dungar says that he entered the prison population having some explaining to do, that he stopped going to mealtimes and recreation because he didn't know who believed him. Again, in the context of a pro se prisoner complaint, this is sufficient to get past the motion to dismiss stage. He does not allege specific conversations, but he implies that those conversations happened. I also would like to point out that my colleague on the other side said that he acknowledges that if this is grounded in a real fear, we are in the land of farmer and Bistrian. And here, again, we have an allegation that in the prison context, this is sufficient to being labeled a sex offender. It's sufficient to state an Eighth Amendment claim. You do not need to wait to the point of an assault. And we have that here. I'd also, following up on something that Judge Krause had asked earlier, I'd also point the court to this court's decision in Young v. Kahn, which is 926 F. 2nd, 1396. It's a Third Circuit decision from 1991, cited on page 13 of our reply brief, regarding the emotional harms that flow from, that can constitute an Eighth Amendment claim and is highly relevant to surviving the arguments raised by Defendant Smith here. Vincenski seems to be talking about emotional harm in the context of conditions of confinement. Are you arguing both a failure to protect and conditions of confinement, or is it only one or the other of those claims? We believe that the failure to protect is squarely the right at issue here. It's a failure to protect from a substantial risk of harm at the hands of the other inmates. The conditions of confinement claim, it was not analyzed as such by the district court, and we have not pressed that angle on appeal. The failure to protect is squarely what the claim is. So with conditions of confinement, we, as in Vincenski, have acknowledged that emotional harm can rise to the level of being a deprivation of essential needs. But where have we acknowledged that in the context of a failure to protect claim? I think that the closest that, I think in the Young case that I cited, did talk about a failure to protect in broad strokes of the Eighth Amendment and where there's not protection from others in the prison context. Similarly, as I mentioned, I recognize they're non-presidential, but more in McIntosh has addressed this, a number of lower court decisions in the circuit have addressed this. But there is a, you know, it is on the element of whether there's sufficient harm for the purposes of the Eighth Amendment that the Supreme Court and this court have repeatedly recognized that you don't need to wait until the point of an actual physical assault to breach that threshold. Briefly on the question of qualified immunity, I would note that the court did not reach this issue below, and that this court has recognized that this court should not reach an issue, particularly such as qualified immunity, that has not been reached below, particularly in light of the court's hesitation to dismiss claims at the pleading stage on the basis of qualified immunity. But even if the court were to reach the qualified immunity argument, it is clearly established, as we've discussed, that improperly labeling a prisoner a sex offender violates the Eighth Amendment, even if no actual assault occurs. This court has recognized in L v. City of Pittsburgh, a 2020 presidential decision, that it's irrelevant whether clearly established case law comes from another circuit. But in here, we also have circuit case law confirming that it's clearly established that labeling someone a sex offender. What's the site of that? I'm sorry? What's the site to that? Let's see. It's L v. City of Pittsburgh. It is cited in our briefs. That's fine. If you just tell us where it's cited in your reply brief. Yes, it is cited in our reply brief. Obviously, if only you could reply brief us. It's 975 F 3rd 327. It's a 2020. F 3rd 327? 327, yep. Thank you. And is that the right level of specificity to define the right, the labeling of an inmate as a sex offender? So the way in which this court has recognized that you determine whether it's a clearly established right is whether it's sufficiently clear that a reasonable official would understand what he is doing violates the law. The Supreme Court has recognized that you need not cite a case directly on point for purposes of qualified immunity. The court has said that rather prison officials or officials can still be unnoticed. Their conduct violates established law, even in novel factual circumstances, so long as the law provided fair warning that their conduct was unconstitutional. So here I think we have both the general threat to someone, a concern about a threat to an inmate's life and safety placed the officials on notice and was sufficient to state an Eighth Amendment claim, as we've been discussing, and also that the prisoner official should have been on notice of that concern. Thank you. Thank you very much to the Council for very well presented arguments. I would ask if a transcript could be prepared of this whole argument and if the government would pick that up, please. And Ms. Crowley, is your firm taking this pro bono? Yes, Your Honor. Well, you're to be congratulated for an excellent job.